UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| George W. Shufelt,<br><br>                                    Plaintiff,<br><br>v.<br><br>J. Silva, M.D., et al.,<br><br>                                    Defendants. | Case No.:  3:17-cv-01652-LAB-PCL<br><br>**REPORT AND RECOMMENDATION GRANTING IN PART DEFENDANTS' MOTION TO DISMISS (Doc. 13.)** |

## I. INTRODUCTION

Plaintiff George W. Shufelt, presently incarcerated at High Desert State Prison, has filed a First Amended Complaint (FAC) against Defendants J. Silva, S. Pasha, M. Glynn, S. Roberts, R. Walker, J. Lewis, and R. Zhang regarding the medical care that he received while he was incarcderated at Richard J. Donovan Correctional Facility between 2013 and 2017. (Doc. 10.) Defendants have moved to dismiss the FAC under Fed. R. Civ. P. 12(b)(6) for failure to state a viable claim. (Doc. 13.) The Honorable Larry Alan Burns referred this matter to the undersigned Judge for Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 72.1(c)(1)(d). After a thorough review of the motion, opposition, and pleadings, the Court recommends granting in part and denying in part Defendants' motion and dismissing Plaintiff's FAC in its entirety.

## II. BACKGROUND

In 2013, Plaintiff was incarcerated at Richard J. Donovan Correctional Facility (RJD) in San Diego, California. (Doc. 10, at 5.) Before his injury, Plaintiff was "very active," running several miles per day. (Id.) In early December 2013, Plaintiff suffered a left sciatic nerve root injury, which Plaintiff alleges deteriorated daily. (Id.)

On December 28, 2013, Plaintiff filed an inmate health care appeal seeking an MRI and surgery (Grievance #1). (Id.) In his appeal, Plaintiff asserts that he "can barely walk" and "cannot stand for more than a few minutes." (Id.) On January 23, 2014, Dr. Ortega allegedly examined Plaintiff and concluded that Plaintiff would "benefit from an MRI." (Id. at 5-6.) Additionally, Dr. Ortega stated that the MRI results and an orthopedic consultation could deem surgery a possibility. (Id.) Defendants S. Roberts and M. Glynn agreed with Dr. Ortega's diagnosis and gave their approval for the tests. (Id.)

On February 11, 2014, Plaintiff underwent a lumber spine MRI. (Id. at 6.) The MRI showed that Plaintiff had "lower lumber degenerative and facet degenerative disease with disc bulge/protrusion from L3-4 through L5-S1." (Id.) At this time, Plaintiff alleges that he began to lose use of both his legs and feet and could no longer walk without support. (Id.)

On March 30, 2014, Plaintiff filed an ADA reasonable accommodation request. (Id. at 6.) The request was granted on June 20, 2014. (Id. at 7.)

On May 19, 2014, Defendant J. Lewis noted in his response to Grievance #1 at the third level of review that Plaintiff refused physical therapy treatment and failed to show up to medication administration. (See Doc. 1-2 at 8, Ex. A.)

In June 2014, Plaintiff filed Grievance #2, complaining of his condition and seeking an orthopedic surgeon. (Doc. 10, at 7; see Doc. 1-2, at 27.) In response, Dr. K. Dean recommended a wheelchair for Plaintiff and a consultation with an orthopedic surgeon. (Doc. 10, at 8.) Defendants S. Roberts and J. Lewis partially granted Dr. K. Dean's recommendations, giving Plaintiff a wheelchair and submitting a request for an orthopedic consult. (Id. at 8; see Doc. 1-2, at 28.)

On August 26, 2014, Plaintiff saw neurosurgeon Dr. Yoo. (Doc. 10, at 8.) Dr. Yoo recommended two options to Plaintiff: self-improvement or surgery. (Id. at 9.) Additionally, Dr. Yoo recommended that Plaintiff take narcotics for pain. (Id. at 9.) Following Dr. Yoo's recommendations, Defendant Nurse S. Pasha, under Dr. Silva's supervision, prescribed morphine and submitted a Request for Services which included a request that Plaintiff undergo back surgery. (Id. at 9.) Defendant J. Walker approved the recommendation for Plaintiff's surgery for October 7, 2014. (Id. at 10.)

On September 30, 2014, Dr. Yoo examined Plaintiff for the second time. (Id. at 10.) In his report, Dr. Yoo stated that he intends to perform a nerve root block to determine whether only Plaintiff's left side needed treatment. (Id. at 10.) However, Plaintiff alleges that Dr. Yoo never notified him of the test. (Id.) Additionally in his report, Dr. Yoo states that Plaintiff requested to change the surgery date to next year because "[he] would like to finish his college work." (Doc. 1-2, at 41, Ex. K.) In response, Defendant S. Pasha rescheduled the surgery to January. (Doc. 1-2, at 47, Ex. M.) However, Plaintiff asserts that Defendants canceled his scheduled surgery on October 7, 2014 for no apparent reason. (Doc. 10, at 10.)

On January 24, 2015, Plaintiff mistakenly thought that he was to undergo surgery when actually Dr. Yoo intended to perform the nerve root block. (Id. at 10.) As a result of the miscommunication, Plaintiff refused the test. (Id.) However, Plaintiff alleges Dr. Yoo agreed with him that the nerve root block was unnecessary and that surgery should still be performed. (Id. at 11.) But before the scheduled surgery date, Plaintiff states that Defendants cancelled the surgery and took Plaintiff's morphine away. (Id.) Defendants apparently canceled the surgery because "the risks outweighed the benefits," (id.), and took away his morphine prescription because Plaintiff's two previous drug tests showed that he was not taking the morphine (id.). However, Plaintiff asserts that he took his medication as prescribed and that any negative drug test was a false negative. (Id.)

In February 2015, Plaintiff filed Grievance #3 to appeal the surgery denial and termination of his medication. (Id. at 11-12.) Defendants S. Roberts and M. Glynn denied

3

Grievance #3 at the second level of review because Plaintiff refused the nerve block and the drug test showed that Plaintiff may have been giving his medication to another individual. (Doc. 1-2 at 65, Ex. T; see Doc. 10, at 12.) At the third level of review, Defendant J. Lewis denied Grievance #3. (Doc. 10, at 12.)

On March 12, 2015, Plaintiff saw Dr. Yoo again. (Doc. 10, at 12.) Dr. Yoo found that Plaintiff seemed to be "under medicated" and that "[Plaintiff] is now ready for surgical treatment." (Id.; see Doc. 1-2 at 75, Ex. V.) Additionally, Defendant R. Walker responded to Grievance #3, stating that Plaintiff was prescribed Lyrica for pain and that Plaintiff was "argumentative and loud" when the doctor attempted to discuss why he wouldn't be given morphine. (Doc. 1-2 at 65, Ex. T.)

On May 6, 2015, Defendant R. Zhang examined Plaintiff. (Doc. 10 at 13.) By that time, Plaintiff alleges that he was "completely crippled." (Id. at 14.) However, Defendant R. Zhang's report states that Plaintiff was in "a good mood" and that he was able to shuffle his feet and move his wheelchair "rather quickly." (Doc. 1-2 at 85, Ex. Y.) Additionally, Plaintiff become "very argumentative" when Defendant R. Zhang refused to prescribe morphine. (Id.) Nevertheless, Defendant R. Zhang submitted a request for back surgery for the Plaintiff. (Id.) But again, the request was denied at the third level of review on May 29, 2015 because "the risks outweighed the benefits." (Id. at 89; see Doc. 10, at 15.)

Plaintiff was confined to a wheelchair until he was transferred to High Desert State Prison (HDSP) on November 3, 2016. (Doc. 10, at 15.) At HDSP, Dr. Vacca approved both narcotics and surgery for Plaintiff. (Id. at 16.) After the surgery, Plaintiff alleges that "[he] would never had a chance to stand under his own powers" if not for the surgery. (Id. at 17.) Additionally, Plaintiff asserts that he now has "permanent irreversible nerve damage to both his legs" because the surgery was performed so late. (Id. at 17.) Finally, Plaintiff asserts that his quality of life "has greatly improve[d]" after the surgery. (Id. at 18.)

///

3:17-cv-01652-LAB-PCL

# III. PROCEDURAL BACKGROUND

Pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b), this Court dismissed Plaintiff's original Complaint for failure to state a claim but granted him forty-five days leave to amend his complaint. (Doc. 4.) On November 16, 2017, Plaintiff filed his FAC, which added a American with Disabilities Act (ADA) claim and a Rehabiliation Act (RA) claim in addition to his original Eighth Amendment deliberate indifference claims. (Doc. 10.) Defendants moved to dismiss the FAC, (doc. 13), and Plaintiff filed an opposition (doc. 23). Finally, Defendants filed a reply to Plaintiff's opposition. (Doc. 26.)

# IV. LEGAL STANDARD

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the claims asserted in the complaint. Fed. R. Civ. P. 12(b)(6); Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). The court must accept all allegations of material fact pleaded in the complaint as true. Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337–38 (9th Cir. 1996). The Court must also construe the allegations and draw all reasonable inferences from them in favor of the nonmoving party. Id. To avoid a Rule 12(b)(6) dismissal, a complaint need not contain detailed factual allegations; rather, it must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556). However, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Id. at 678 (quoting Twombly, 550 U.S. at 557) (internal quotations omitted).

"[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986) (alteration in original)). A court need not accept "legal conclusions"

as true. Iqbal, 556 U.S. at 678. "[T]o be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011). Despite the deference the court must pay to the plaintiff's allegations, it is not proper for the court to assume that "the [plaintiff] can prove facts that [he or she] has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters, 459 U.S. 519, 526 (1983).

## V. DISCUSSION

### A. Statute of Limitations

Defendants have moved to dismiss the FAC as to Defendants S. Pasha, S. Roberts, R. Walker, J. Lewis, and M. Glynn for failure to file a complaint against them within the statute of limitations. (Doc. 13-1, at 13-14.) Defendants argue that Plaintiff can only assert claims for injuries which occurred two years prior to August 16, 2017, the date that Plaintiff filed his complaint. (Doc.13-1, at 13.) Defendants point to Plaintiff's initial complaint, where he conceded that his cause of action accrued on May 29, 2015 as to these defendants. (Id. at 14.) In opposition, Plaintiff argues that he had four years to bring this action. (Doc. 23, at 5.)

Federal courts borrow state statutes of limitations for personal injuries arising under 42 U.S.C. § 1983 because § 1983 does not include a specific statute of limitations. Wallace v. Kato, 549 U.S. 384, 387 (2007). In California, the statute of limitations for personal injuries is two years. Cal. Code Civ. Proc. § 335.1. Moreover, federal rules conforming to common-law tort principles govern the statute of limitation's accrual date in a 42 U.S.C. § 1983 action. Wallace, 549 U.S. at 387. Under common-law tort principles, the standard rule is the accrual starts when the plaintiff has a "'complete and present cause of action.'" Id. (quoting Rawlings v. Ray, 312 U.S. 96, 98 (1941)). Lastly, a cause of action may be tolled for a maximum of two years if the plaintiff is imprisoned at

the time of the accrual. <u>Moreno v. Pia</u>, 490 F. Supp. 2d 1055, 1062 (C.D. Cal. 2007); Cal. Code Civ. Proc. § 352.1.

Plaintiff correctly argues that he had four years to file this action. Both sides agree that California's statute of limitations for personal injuries is two years. However, Defendants fail to account for Cal. Code of Civ. Proc. § 352.1, which states that a prisoner has a maximum of two additional years to file a cause of action if the prisoner is not serving a lifetime sentence. Both Plaintiff and Defendants agree that the accrual date is May 29, 2015, when Defendants S. Pasha, S. Roberts, R. Walker, J. Lewis, and M. Glynn all collectively denied Plaintiff's request for surgery and narcotics. (Doc. 23, at 5.) As Plaintiff is not serving a life sentence, § 352.1 gives Plaintiff two additional years to file his claims. Thus, Plaintiff has until May 29, 2019 to file his claims. Accordingly, Defendants' motion to dismiss for failure to comply with the statute of limitations should be **<u>denied</u>**.

**B. <u>Eighth Amendment Deliberate Indifference Claims</u>**

Defendants have moved to dismiss Plaintiff's Eighth Amendment deliberate indifference claims against all Defendants. Defendants argue that Plaintiff has not alleged any facts that show deliberate indifference and that their decisions to delay Plaintiff's surgery and to change Plaintiff's pain medication regime were supported by medical opinion. (Doc. 13-1, at 15-16.) In opposition, Plaintiff argues that there was no difference of medical opinion because Dr. Yoo and Dr. Vacca both recommended the surgery and that Defendants refused to follow their advice in a timely manner and without a medical basis. (Doc. 23, at 13.)

To prove that prison officials have been deliberately indifferent to a prisoner's serious medical needs, the plaintiff must show that the defendants have deprived him of life's necessities, and must prove that the defendants acted with deliberate indifference in response to the inmate's needs. <u>Hallet v. Morgan</u>, 296 F.3d 732, 744 (9th Cir 2002). A prison official cannot be found liable under the Eighth Amendment unless the official knows of and disregards an excessive risk to the inmate's health or safety. <u>Toguchi v.</u>

7

Chung, 391 F.3d 1051, 1061 (9th Cir. 2004). The Eighth Amendment deliberate indifference test has both an objective and subjective requirement. Farmer v. Brennan, 511 U.S. 825, 838 (1994). "To meet the objective standard, the denial of a plaintiff's serious medical need must result in 'unnecessary and wanton infliction of pain.'" Snow v. McDaniel, 681 F.3d 978, 985 (2012) (finding that the plaintiff had a serious medical need when he could not perform daily tasks) (overruled on other grounds). "The subjective standard of deliberate indifference requires "more than ordinary lack of due care for the prisoner's interests or safety.'" Id. (quoting Farmer, 511 U.S. at 835). The plaintiff must show both that "the course of treatment the doctors chose was medically unacceptable under the circumstances" and "that they chose this course in conscious disregard of an excessive risk to plaintiff's health." Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996). Importantly, a difference in medical opinion does not show deliberate indifference. Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989).

Plaintiff claims that Defendants were deliberately indifferent to his serious medical needs by refusing to authorize spinal surgery in a timely manner that was recommended by Dr. Yoo and Dr. Vaca. (Doc. 10, at 19.) Although Plaintiff eventually did undergo back surgery at High Desert State Prison as recommended by Dr. Vaca, Plaintiff asserts that he now has "permanent irreversible nerve damage to both his legs" because the surgery was performed so late. But while Dr. Yoo recommended surgery to treat Plaintiff's spinal condition as one possible course of action, he also recommended physical rehabilitation in lieu of surgery. Even though Plaintiff's quality of life "greatly improved" after he finally had his spinal surgery, surgery was still a risky option given Dr. Yoo's alternative course of treatment. Moreover, rather than showing deliberate indifference, Plaintiff's allegations show that Drs. Silva and Zhang and Nurse Pasha acknowledged Plaintiff's complaints of pain, conducted physical examinations, ordered tests such as MRIs in accordance with Dr. Yoo's recommendations, and provided medications that they deemed appropriate to Plaintiff's circumstances. And supervisors M. Glynn, S. Roberts, R. Walker, and J. Lewis all made decisions about Plaintiff's

medical complaints based on the differing medical opinons provided to them and not out of any deliberate indifference to his medical condition. In sum, Plaintiff's factual allegations regarding the surgery delay do not amount to viable deliberate indifference claims against Defendants.

Plaintiff also argues that Defendants disregarded an excessive risk to Plaintiff's health when they refused to continue his morphine prescription. However, the evidence submitted by Plaintiff shows that Plaintiff was given morphine for a while to treat his pain but that the medication was eventually taken away after several drug tests showed that he was not taking the morphine. Even though Plaintiff asserts that the drug tests were false, Plaintiff's factual allegations also show that alternative pain medications like Lyrica were offered to Plaintiff, and Plaintiff has not alleged any facts to show that Lyrica was an unacceptable pain medication under the circumstances. Defendants have not been deliberately indifferent for refusing to provide a medication that Plaintiff may desire while providing him with an alternative. See <u>Franklin v. Oregon</u>, 662 F.2d 1337, 1344 (9th Cir. 1981) ("[A] difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a § 1983 claim."). And Defendants M. Glynn, S. Roberts, R. Walker, and J. Lewis all made supervisory decisions based on the totality of the medical opinions provided to them and not out of any deliberate indifference to his pain.

Accordingly, Defendants' motion to dismiss all of Plaintiff's Eighth Amendment deliberate indifference claims should be granted as to all Defendants.

## C. **Plaintiff was not permitted to add a New Cause of Action**

Defendants move to dismiss Plaintiff's ADA and RA claims because Plaintiff added new causes of action without the Court's permission.[1] Defendants argue that this Court only granted leave to "file an Amended Complaint which cures all the deficiencies

---

[1] Plaintiff's initial complaint did not include the ADA and RA claim. After this Court granted Plaintiff leave to amend his complaint, he added the ADA and RA claims.

of the pleading notes," (Doc. 4, at 10), and thus did not grant permission to add a new cause of action. Plaintiff does not address this argument in his opposition.

Defendants read too much into the Court's order. No language in the order forbids Plaintiff from adding a new cause of action; rather, the only requirement is that the amended complaint cure all the deficiencies of the initial pleadings. (Doc. 4, at 10.) The Court does not read its order granting leave to amend as an order forbidding new causes of action in an amended complaint. Thus, Defendants' motion to dismiss on this issue should be **denied**.

### D. **ADA and Rehabilitation Act**

Defendants have moved to dismiss Plaintiff's ADA and RA claims for failure to state viable claims for relief. Defendants argue that Plaintiff has not alleged sufficient facts to show that he was denied a public entity's service because of his disability or handicap. In his opposition, Plaintiff essentially concedes that his ADA and RA claims are deficient. (Doc. 23, at 15.)[2]

To establish disability discrimination under the ADA, the plaintiff must prove four elements: (1) the plaintiff has a disability; (2) the plaintiff was qualified to receive some public entity's service; (3) the plaintiff was excluded from such service; (4) the exclusion was because of the plaintiff's disability. Thompson v. Davis, 295 F.3d 890, 895 (9th Cir. 1997). Similarly, the plaintiff must establish four elements to establish handicap discrimination under the RA: (1) the plaintiff is handicapped within the meaning of the RA; (2) the plaintiff is qualified for services sought; (3) the plaintiff was denied the services solely because of the plaintiff's handicap; and (4) the program providing the services receives federal financial assistance. Lovell v. Chandler, 303 F.3d 1039, 1052 (9th Cir. 2002). "To plead disparate treatment under the ADA or RA, a plaintiff must allege that other non-disabled individuals without plaintiff's disability were treated more

---

[2] Plaintiff states in his opposition that he does not intend to pursue the ADA and RA claim. (Doc. 23, at 15.)

favorably." <u>Atayade v. NAPA State Hosp.</u>, 255 F. Supp. 3d 978, 1001-02 (E.D. Cal. 2017). "To plead a failure to accommodate under the ADA or RA, a plaintiff must allege that a public entity knew of plaintiff's disability but failed to provide reasonable accomodations." <u>Id.</u> "However, inadequate or negligent medical treatment alone does not constitute an unlawful failure to accommodate under the ADA or RA." <u>Id.</u>

Defendants' motion should be granted as to the ADA and RA claims because Plaintiff fails to show that he was denied services solely because of his disability or handicap. Plaintiff may very well be disabled or handicapped, but he does not attempt to explain that his disability was the de facto reason that he was denied services that should have been due to him. He also does not plead facts that he was treated differently than other similarly situated inmates.  Rather, Plaintiff only asserts that Defendants failed to treat him in a timely manner. Accordingly, Defendants' motion to dismiss should be **<u>granted</u>** as to the ADA and RA claims.

///
///
///
///
///
///
///
///
///
///
///
///
///
///
///

# VI. CONCLUSION

This Report and Recommendation is submitted to the Honorable Larry Alan Burns, United States District Judge, pursuant to 28 U.S.C. § 636(b)(1) and Local Civil Rule 72.1(c)(1)(c) of the United States District Court for the Southern District of California. For the reasons outlined above, **IT IS HEREBY RECOMMENDED** that the Court issue an Order: (1) approving and adopting this Report and Recommendation, and (2) dismissing Plaintiff's First Amended Complaint in its entirety.

Any party may file written objections with the Court and serve a copy on all parties on or **July 30, 2018**. The document should be captioned "Objections to Report and Recommendation." Any reply to the Objections shall be served and filed on or **August 10, 2018**. The parties are advised that failure to file objections within the specific time may waive the right to appeal the district court's order. <u>Ylst</u>, 951 F.2d at 1157 (9th Cir. 1991).

IT IS SO ORDERED.

DATE: July 13, 2018

Peter C. Lewis
United States Magistrate Judge

3:17-cv-01652-LAB-PCL