# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GEORGE W. SHUFELT,<br><br>                      Plaintiff,<br><br>v.<br><br>J. SILVA, M.D., et al.,<br><br>                      Defendant. | Case No.: 17cv1652-LAB (RBM)<br><br>**ORDER ADOPTING REPORT AND RECOMMENDATION; AND**<br><br>**ORDER OF DISMISSAL** |

Plaintiff George Shufelt, a prisoner in state custody, filed this action bringing claims under 42 U.S.C. § 1983 for alleged Eighth Amendment violations. Specifically, he alleges Defendants were deliberately indifferent to his serious medical needs. After his initial complaint was screened and dismissed, he filed a first amended complaint (the "FAC"), adding a claim for disability discrimination based on the same facts. Defendants then moved to dismiss the FAC.

Pursuant to 28 U.S.C. § 636, the matter was referred to Magistrate Judge Peter Lewis for a report and recommendation. On July 13, 2018, Judge Lewis issued his report and recommendation (the "R&R"). After an extension, Shufelt filed objections to the R&R. Defendants filed a reply brief.

/ / /

/ / /

**Undisputed Facts**

Before he was incarcerated in 2013, Shufelt was very active and ran several miles per day. In early December, 2013, he suffered a left sciatic nerve root injury. After this, he experienced pain and trouble walking or standing. His request for health care was granted, and a Dr. Ortega examined him in January, 2014. Dr. Ortega recommended an MRI and orthopedic consultation. Defendants Roberts and Glynn agreed, and gave approval. The lumbar spine MRI showed he had "lower lumbar degenerative and facet degenerative disease with disc bulge/protrusion from L3–4 through L5–S1." Shufelt alleges that his condition began to worsen and he could not walk without support.

On May 19, 2014, Defendant Lewis noted in response to a grievance filed by Shufelt that Shufelt had refused physical therapy and failed to show up to medication administration. (Docket no. 1-2, Ex. A.) In June, 2014, Shufelt filed another grievance, seeking the help of an orthopedic surgeon. Dr. Dean recommended a wheelchair for him, as well as consultation with an orthopedic surgeon. Defendants Roberts and Lewis partially granted the recommended relief, giving Shufelt a wheelchair and submitting a request for an orthopedic consultation.

On August 26, 2014, neurosurgeon Dr. Yoo saw Shufelt. His report following that consultation recommended two alternatives. Shufelt vigorously objects to the R&R's characterization of these, which are discussed below. In his opinion, Dr. Yoo was recommending surgery as the only option and continued to do so.

On September 30, 2014, Dr. Yoo examined Shufelt again. In his report, Dr. Yoo said he intended to perform a nerve block to determine what type of procedure to carry out. (Docket no. 1-2, Ex. K.) He suggested that this be done in January of 2015, in part to accommodate Shufelt's request to be allowed to finish his college work first. (*Id.*) Shufelt asserts that on October 7, 2014, Defendants cancelled his scheduled surgery. Nevertheless, on January 24, Dr. Yoo prepared to carry out

the nerve block. Shufelt, however, was not expecting the nerve block and refused it, causing the surgery to be delayed. Later, Defendants cancelled the rescheduled surgery because, they said, the risks outweighed the benefits.

Shufelt had also been prescribed morphine, which Defendants also took away. They believed he was not actually taking it but instead was giving it to someone else. This was based on two medical tests showing no opiates in his system. Shufelt in his objections offers an explanation why the test was producing a "false negative." Defendant Walker in responding to Shufelt's grievance also noted that he was being prescribed Lyrica for pain, and that he had become "argumentative and loud" when a doctor explained why he was being denied morphine. (Docket no. 1-2, Ex. T.) On March 12, 2015, Dr. Yoo again examined Shufelt, found him "under medicated," and said he was ready for surgery.

On May 6, 2015, Defendant Dr. Zhang examined Shufelt. Although Shufelt alleges he was "completely crippled" at this time, Dr. Zhang's observations were that he was in a good mood, could move his feet, and was able to move his wheelchair rather quickly. Dr. Zhang's report says that when he refused to prescribe morphine, Shufelt became "very argumentative." Dr. Zhang submitted a request for surgery, which was denied on May 29, 2015, because "the risks outweighed the benefits."

Shufelt was confined to a wheelchair until on November 3, 2016 he was transferred to a different prison, where a different doctor approved both narcotics and surgery for him. He did not recover full use of his legs, but he agrees his quality of life is better.

**Legal Standards**

A district court has jurisdiction to review a Magistrate Judge's report and recommendation on dispositive matters. Fed. R. Civ. P. 72(b). The Court may accept, reject, or modify, in whole or in part, the R & R's findings or recommendations. 28 U.S.C. § 636(b)(1). This section does not require some

3

lesser review by the district court when no objections are filed. *Thomas v. Arn*, 474 U.S. 140, 149-50 (1985). The Court reviews de novo those portions of the R & R to which specific written objection is made. *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc).

The Eighth Amendment is violated by "deliberate indifference" to serious medical needs, not mere negligence. *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976). Deliberate indifference arises only where a prison official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Both sides appear to agree that Shufelt faced a serious medical need, and instead dispute whether the subjective "deliberate indifference" standard is met.

To establish deliberate indifference, a prisoner must establish something worse than malpractice, or even gross negligence. *Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir.1990). Accidents and mistakes, even if they result in unnecessary suffering, do not amount to deliberate indifference. *Gamble*, 429 U.S. at 105. Nor does a difference of opinion between a plaintiff and defendants amount to an Eighth Amendment violation. *Toguchi v. Chung*, 391 F.3d 1051, 1058–60 (9th Cir. 2004). To establish deliberate indifference, a plaintiff must show both that the course of treatment was "medically unacceptable under the circumstances," and that "they chose this course in conscious disregard of an excessive risk to plaintiff's health." *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996).

Prison officials are also authorized to consider legitimate penological interests even in the Eighth Amendment context. *Whitley v. Albers*, 475 U.S. 312, 320 (1986). *See also Turner v. Safley*, 482 U.S. 78, 89 (1987) (prison regulation that impinges on inmates' constitutional rights is valid if reasonably related to legitimate penological interests). Typically, inmates' medical needs do not clash

4

with safety and rehabilitation concerns, *id.*, but they sometimes can. *See Pullano v. Brammer*, 684 Fed. Appx. 643, 644 (9th Cir. 2017) (remanding for examination of whether inmate who was denied medical treatment experienced pain and suffering that did not serve any penological purpose); *Ramirez-Salgado v. Lewis*, 2018 WL 4214906 (E.D. Cal., Sept. 5, 2018) (holding that depriving prisoner of pain medication was permitted under the Eight Amendment if doing so was based on legitimate penological interests).

At the motion to dismiss stage, review is limited to the contents of the complaint, *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754–55 (9th Cir.1994), including documents physically attached to the complaint or documents the complaint necessarily relies on and whose authenticity is not contested. *Lee v. County of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). Here, Shufelt attached numerous documents to the original complaint, and continues to cite and rely on them. The Court therefore treats them as part of the complaint for purposes of this motion.

**Objections**

Although Shufelt's objections spanned eleven pages, they are aimed at only a few sections of the R&R. In particular, he argues that the R&R misconstrued two of Dr. Yoo's recommendations or assessments. He also argues that the test showing no morphine in his system was flawed, and that Defendants knew he was taking it.

Dr. Yoo's report of August 26, 2014 reads, in pertinent part:

I went over his options and told him that:

1. He could try to improve on his own with time and that this is possible but would require a length[y] amount of time.

2. He could undergo surgical treatment. I think that surgical treatment for this gentleman is to do L5-S1 decompression and interbody and

5

17cv1652-LAB (RBM)

instrumented fusion as well as L4-5 decompression and Coflex placement.

(Docket no. 1-2, Ex. I.) Shufelt argues that Dr. Yoo was merely identifying what he, Shufelt, could do, and that Dr. Yoo consistently and unequivocally recommended surgery alone as a proper course of action. (Objections to R&R at 1–2.) This is a misreading of the report, however. Dr. Yoo did <u>not</u> say surgery as the only effective or reasonable option. Even though "try[ing] to improve on his own" would require a long time, it was "possible." More to the point, Defendants, reading this report, could reasonably have interpreted it that way. The fact that Shufelt later opted for surgery does not mean it was the only acceptable option.

The R&R characterizes the first option in passing as "physical rehabilitation in lieu of surgery." (R&R at 8:19–21.) Elsewhere, it characterizes this option as "self-improvement." (*Id.* at 3:1–2.) Shufelt's objections argue that this reading is wrong, and that what Dr. Yoo actually said was that he could take no action at all and hope for a spontaneous recovery. He later dismisses this option as obviously ineffective and impractical, and argues that Defendants knew it would not work. This is not, however, what Dr. Yoo said, and more importantly, Defendants were not bound to read Dr. Yoo's report this way.

The report does not say what exactly Shufelt would need to do in order to "improve on his own," though it clearly contemplates some kind of rehabilitation (*e.g.*, rest, exercise, therapy, etc.) The report makes clear this could be an effective approach, even though it would take a long time. In fact, its mention of the time frame shows that Dr. Yoo thought it could succeed. Reading the first option, as Shufelt does, as ignoring the problem, is unreasonable. The existence of this option also shows that Dr. Yoo did not think surgery was urgently needed. It also bears mention that Dr. Yoo himself idelayed surgery by several months, suggesting he thought it was not an urgent situation.

/ / /

6

17cv1652-LAB (RBM)

Shufelt also argues that after what he calls a "sufficient time," Defendants should have realized that the first option was not going to work. This objection is based on his misreading of the option. He has never alleged that he tried whatever could be done to "improve on his own," and the record suggests in fact that he was refusing physical therapy appointments (or, at least, Defendants believed he was). He has not plausibly alleged facts supporting his conclusion that Defendants knew this option would not work.

Shufelt's objections also focus on the risks vs. benefits analysis. He bases his objections on reports by Dr. Yoo and Dr. Vacca, which he alleges says the only possible downside was that the surgery might not be ineffective, and that "[a]s far as Risk, there was none." (Objections at 7.) In fact, this seriously misreads both reports.

Dr. Yoo's report merely said "The patient understood the medical rationale for [the procedure] and understands all risks of surgical procedure and will be giving consent." (Docket no. 1-2, Ex. BB.) It did not say what those risks were, but clearly there were some.

Dr. Vacca's report shows he counseled Shufelt about the risks and drawbacks of surgery, in order to help Shufelt decide whether he wanted to undergo it. (*Id.*, Ex. MM.) For example, he mentioned that 80% of patients benefit from surgery, and that the biggest risk is non-response. He also told Shufelt about the small risks of wound infection, spinal fluid leak, and the chance he would require additional surgery later (which was estimated at 15%). (*Id.*) Dr. Vacca's notes make clear that Shufelt based the decision to get surgery on how badly his symptoms were bothering him. This implies that the decision is based on some kind of analysis of pros and cons, and that it is not a foregone conclusion.

Furthermore, other doctors' reports emphasized that the risks might not outweigh the benefits. A report by Dr. Shakiba, dated July 10, 2015, mentions a discussion with Shufelt about this:

> The patient was advised that his [request for surgery] had been denied. He became somewhat irritated by this, reporting that he is already in a wheelchair and he does not understand how the risk of surgery could outweigh the benefits. I advised him that he could possibly not benefit from the surgery and develop other problems such as infection and other nerve damage.

(Docket no. 1-2, Ex. CC.) In short, the surgery carried some risks, not none as Shufelt argues. And doctors treated the weighing of risks against benefits as a matter that could rationally be decided either way.

Shufelt argues that because blood was drawn for his blood tests fourteen hours after he had taken morphine, the morphine must have metabolized, creating a false negative. He also posits that the drug test could not detect small amounts of drugs in the system. Even assuming these facts are true, Defendants were not required to believe him rather than the testing laboratory. The blood test was unannounced (Docket no. 1-2, Ex. Q), and the test results as reported by a laboratory showed that the results were inconsistent with his taking prescribed morphine. Dr. Zhang's notes after seeing Shufelt on May 6, 2015 reflects that Shufelt was being given Tylenol and Lyrica for his pain, but was occasionally missing his doses of Lyrica. (*Id.*, Ex. Y.) This report also records an incident between Shufelt and Dr. Zhang:

> He has a history of morphine sulfate diversion. Serum drug tests were negative on 12/09/2014 and 01/02/2015. The patient was supposed to be on morphine during those drug tests. His morphine was weaned off due to increased risk of abuse, addiction, and overdose. . . .Not soon after he entered the room, the patient began asking to be placed back on morphine for his chronic pain. The patient states that his neurosurgeon, Dr. Yoo, ordered narcotics for him for his pain, and he demanded to be placed back on morphine sulfate. The patient became very argumentative and began to raise his voice. Custody was called to prevent escalating of the situation. The patient continued to be argumentative and the interview was ended. I will reschedule.

///

(*Id.*) The R&R included this incident in its findings of fact (R&R at 4:24–5:2), and Shufelt has not objected to this finding.

Dr. Yoo concluded that Shufelt's medication was not optimal and he seemed undermedicated. Even assuming Dr. Yoo thought Shufelt ought to be given morphine, nothing in the record shows Dr. Yoo knew about the negative drug tests or had considered the possibility that Shufelt was diverting the morphine. Dr. Vacca, by contrast, thought either Norco or Percocet could be prescribed, though he did not say it was medically necessary. (Docket no. 1-2, Ex. MM.) Furthermore, the record shows Defendants were motivated by the need to prevent drug abuse, addiction, and overdose, all of which are also legitimate medical and penological concerns.

The key issue with all these claims is not whether Defendants should have believed Shufelt or followed Dr. Yoo's recommendations, whether Shufelt can show they did a poor job managing his medical care, or whether in retrospect they should have done things differently. The issue is whether at the time they exhibited deliberate indifference. Shufelt has not alleged facts showing that they did, and the documents he provided and relies on show that they were not indifferent. Rather, they were motivated by other legitimate considerations, including a concern for his own welfare. They were taking steps to treat his pain, provided him with mobility aids, arranged for a primary care physician to monitor him, and made arrangements for him to see other doctors. They also made a course of treatment available to him that they had reason to believe was medically acceptable. The fact that he was not showing improvement would not, by itself, put them on notice that the treatment was medically inappropriate, particularly because he was not fully cooperating.

It also bears mention that four of the Defendants are doctors and that Shufelt was seen and treated by doctors besides Dr. Yoo. Even though Dr. Yoo was a specialist, other doctors were entitled to disagree with his recommendations or

opinions, particularly if those opinions were based on information Dr. Yoo did not have or had not considered. Shufelt has not plausibly alleged facts showing that these other doctors' recommendations were made in bad faith or exhibited deliberate indifference to his welfare.

The R&R included other recommendations, including dismissal of Shufelt's ADA and Rehabilitation Act claims. Besides the fact that Shufelt added these claims without leave, they have no merit. They are based on the same facts as Shufelt's Eighth Amendment claim, and Shufelt has not pled any facts to support a claim under either theory.

**Conclusion and Order**

The Court **ADOPTS** those portions of the R&R to which no objection has been filed. Having reviewed *de novo* those portions to which Shufelt has filed specific written objections, the Court **OVERRULES** the objections and **ADOPTS** the R&R. The FAC is **DISMISSED**.

Neither the motion to dismiss nor the R&R mentioned whether dismissal should be with or without prejudice. Dismissal without leave to amend is normally appropriate only where it is clear the complaint could not be saved by amendment. *See Lopez v.* Smith, 203 F.3d 1122, 1130 (9th Cir. 2000). It appears unlikely Shufelt can successfully amend, particularly because he has already amended once. Yet neither Defendants' motion nor the R&R addressed this point, and the Court cannot say for certain that he could not.

If Shufelt believes he can successfully amend, he should file an *ex parte* motion for leave to amend by **March 20, 2019**. His motion should include all the factual allegations he would like to add to the FAC. He should not include legal arguments or conclusions, and should not use his motion to seek reconsideration of any matter already decided. Any opposition is due by **April 4, 2019**. Shufelt's motion is **REFERRED** to Magistrate Judge Ruth Montenegro for a report and recommendation. Although in the interests of economy the Court is not requiring

Shufelt to comply fully with Civil Local Rule 15.1(b), Judge Montenegro may in her discretion require that he do so, and may order additional briefing.

Judge Montenegro may extend these deadlines for good cause. But because the Court is requiring Shufelt to make factual allegations based on facts he should already know and has identified pleading defects for him, he should not need any time for legal research.

**If Shufelt does not seek leave to amend within the time permitted, the Court will understand that to mean he cannot successfully amend. In that event, this action will be dismissed without leave to amend, without further notice to him.**

**IT IS SO ORDERED**.

Dated: February 20, 2019

*Larry A. Burns*
Hon. Larry Alan Burns
Chief United States District Judge